UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

DAVID M. ROMERO,

Plaintiff,

v.

WALT DISNEY PARKS AND RESORTS U.S., INC.,

Defendant.

CASE NO.: ___6:26-cv-1160-RBD-NWH___

COMPLAINT

JURY TRIAL DEMANDED

Plaintiff David M. Romero complains against Defendant Walt Disney Parks and Resorts U.S., Inc. ("Disney") as follows:

Binder Page 3 of 106

## I.  INTRODUCTION

1.  This is an action for disability discrimination, failure to accommodate, retaliation, and hostile work environment under the Americans with Disabilities Act, as amended (ADAAA), 42 U.S.C. § 12101 *et seq.*, and the Florida Civil Rights Act (FCRA), Fla. Stat. § 760.01 *et seq.*

2.  Plaintiff is a 100% service-connected disabled veteran with PTSD. Disney approved his service-dog accommodation in 2016. Following a violent assault in Puerto Vallarta in 2022, Plaintiff required multiple surgeries and repeated approved medical leaves, all known to Disney. On his first day back from approved medical leave in February 2025, Disney abruptly removed Plaintiff's service dog, issued contradictory statements regarding the accommodation, refused to redistribute critical work during his medical recovery, and ultimately terminated Plaintiff by voicemail while he was attending a VA emergency appointment for a severe PTSD episode triggered by Disney's actions.

3.  These events occurred shortly after Plaintiff turned 55 and became fully eligible for retirement benefits and employee perks. Plaintiff declined retirement because he required continued employer-provided health insurance to complete multiple upcoming surgeries and obtain specialized medical care related to his injuries. Following his termination, Disney

coded Plaintiff as ineligible for rehire and revoked employment-related retirement privileges for which Plaintiff had become eligible, including his lifetime Silver Pass. **(EX-054)**

## II.  JURISDICTION AND VENUE

4.  This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 12117(a). Supplemental jurisdiction exists over the FCRA claims under 28 U.S.C. § 1367.

5.  Venue is proper in the Middle District of Florida, Orlando Division, because a substantial part of the events giving rise to the claims occurred in Orange and Osceola Counties, Florida.

## III.  PARTIES

6.  Plaintiff David M. Romero is a resident of Orlando, Florida, and was employed by Disney as an Analytics Manager from March 11, 2011, until his termination on February 19, 2025.

7.  Defendant Walt Disney Parks and Resorts U.S., Inc. is an employer subject to the ADA and FCRA with its principal place of business in this District.

## IV.  FACTUAL ALLEGATIONS

8.  In 2016, Disney formally approved Plaintiff's service-dog accommodation for PTSD via official PARC form. The accommodation was designated

**permanent** and Plaintiff continued using Merida as his successor service dog after Jasmine. **(EX-011)**

9. Plaintiff took six approved medical leaves for surgeries and treatment resulting from a violent assault in Puerto Vallarta in June 2022. Disney knew, and acknowledged, that additional surgeries were required. **(EX-052; EX-061)**

10. In late December 2024, Plaintiff turned 55 and became fully eligible for retirement benefits and lifetime employee perks. During an in-person meeting that included Bonni Wall, retirement was raised. Plaintiff explained that he could not retire because he needed continued employer-provided health insurance for his remaining surgeries. After Plaintiff declined retirement, the meeting ended without further resolution.

11. On February 3, 2025, Plaintiff's first day back from approved medical leave, Bonni Wall, Sr. Manager, Human Resources Business, and Shannon McGuire, Director, instructed Plaintiff to remove Merida from the workplace. The next morning, Bonni Wall confirmed in writing that Plaintiff's "current service dog is not authorized to be at the workplace" until the authorization process was complete. **(EX-048)**

12. Disney then issued contradictory statements: Bonni Wall stated that Plaintiff's current service dog was "not authorized to be at the workplace"

until the authorization process was complete (Feb. 4); Chad Byer stated that the accommodation "has not been revoked" while simultaneously demanding a site walk for Merida as a "new" service animal (Feb. 5); and Jim Bowden confirmed that Plaintiff's service-animal accommodation "remains approved by the company" and that the site walk was "not to determine if [Plaintiff was] allowed to have a service animal." Disney also stated that a company ID would be issued after the site-walk step, even though Plaintiff already possessed a Disney-issued service animal ID for Merida. **(EX-048)**

13. Plaintiff repeatedly requested permission to record ADA-related discussions because his PTSD, ADHD, and neurodivergence made it difficult to accurately process and recall high-stress verbal information in real time. Disney's Unauthorized Recordings Policy required "prior permission from the person being recorded," but also allowed recordings when "authorized as part of the employee's work." Plaintiff requested such authorization as a disability-related communication accommodation, but Disney declined to authorize recording. **(EX-008)**

14. On February 18, 2025, Plaintiff informed Disney in writing that he remained willing to participate in ADA-related discussions concerning his accommodations, work status, or timekeeping, but requested that any such

meeting be conducted with a representative present, including legal representation if necessary, or be recorded and documented in writing. Plaintiff also documented a pattern in which critical work instructions related to his performance plan, accommodations, timekeeping, and work status were being provided verbally rather than in writing, and requested that such instructions be provided in writing for clarity and documentation. Plaintiff made this request in good faith based on his understanding of the ADA interactive-process requirement, 29 C.F.R. § 1630.2(o)(3), EEOC Enforcement Guidance, and his disability-related need for accurate communication and recall. Plaintiff expressly stated that if the meeting proceeded despite his request, he was attending under protest and only to avoid claims of insubordination. **(EX-049; EX-060; EX-064)**

15. Contemporaneous VA mental health records documented heightened PTSD symptoms, severe anxiety, impaired concentration, panic symptoms, hypervigilance, and difficulty functioning following the service-dog removal, suspension, and ADA-related workplace conflict. Providers documented that Plaintiff presented in distress, feeling overwhelmed, targeted, emotionally hurt, and helpless, with symptoms significantly impairing attention and concentration. Plaintiff communicated to Disney leadership that he was seeking immediate VA medical attention related to

the worsening of these symptoms and thereafter prioritized medical treatment while continuing to request written communication and accommodation-related support. **(EX-057; EX-049)**

16. On February 6, 2025, Plaintiff sent an email to Shannon McGuire (Director), Bonni Wall (HR), Chad Byer (Employee Relations), and copied VP Deborah Hart, respectfully reminding them of their individual responsibility to comply with the ADA, referencing the medical necessity of his service dog accommodation, and urging them to obtain written legal guidance before continuing the actions being taken against him. Plaintiff specifically requested that any legal basis for the actions be provided in writing. **(EX-045)**

17. On February 7, 2025 at 2:36 PM, Plaintiff sent an email to HR VP Jim, informing him that he had filed an EEOC complaint and was in the process of securing legal representation. Plaintiff requested that further communications related to his ADA accommodations, performance, or other employment matters be directed through his attorney moving forward. Later that same day, Plaintiff sent a detailed written explanation to Shannon McGuire, copying Jim Bowden and Bonni Wall, explaining that the Second Harvest reporting assignment was not feasible without foundational fixes, including API access, standardized weight tracking, pickup logs, and

conversion tables. Plaintiff further explained that multiple prior attempts by other employees had failed and that the project could not produce a meaningful or accurate report until those issues were resolved. **(EX-046; EX-062; EX-063)**

18. During his medical leave and while the PIP was active, colleague Alex Philion confirmed in writing that he was told not to push Plaintiff's code or spread the workload, resulting in the loss of six weeks of test data urgently needed to complete his assigned project. **(EX-053)**

19. On February 18, 2025, Plaintiff was suspended, escorted off property by security, had his equipment confiscated, and discovered that his Cast Life access had been revoked despite receiving no written confirmation of suspension or termination. He notified Disney in writing that he would be at a VA emergency appointment the next morning for a PTSD episode triggered by these actions. **(EX-047)**

20. On February 18, 2025 at 6:33 PM, Plaintiff sent a formal email to Shannon McGuire, Bonni Wall, Jim Bowden, and Deborah Hart notifying them that he was experiencing a severe PTSD episode triggered by the ongoing ADA-related conflict and workplace actions, that he was seeking immediate medical evaluation at the VA, and that he would be absent the following

day for medically necessary care. Plaintiff explicitly asked for confirmation that his absence would not be treated as insubordination. **(EX-047)**

21. Disney ignored the notice and scheduled a mandatory meeting for the exact same time. Plaintiff was at the VA emergency appointment when terminated by voicemail on February 19, 2025. **(EX-027)**

22. After termination, Plaintiff was informed by Global HR that he had been designated as "No Rehire," which Plaintiff documented in a supplemental note to the EEOC. Disney also revoked employment-related retirement privileges, including his lifetime Silver Pass, for which he had just become eligible. Plaintiff alleges these actions were disproportionate to Disney's stated reason for termination and support an inference of retaliation and pretext, particularly given the disputed performance plan, the unreassigned workload during approved medical leave, and written confirmation that Plaintiff's code was not pushed forward. **(EX-054; EX-053)**

## V.  CLAIMS FOR RELIEF

**COUNT I – Disability Discrimination (ADA Title I & FCRA)**

**COUNT II – Failure to Accommodate & Failure to Engage in Interactive Process (ADA & FCRA)**

**COUNT III – Retaliation (ADA & FCRA)**

**COUNT IV – Hostile Work Environment (ADA & FCRA)**

23. Each count incorporates the factual allegations above by reference. Plaintiff alleges that Disney discriminated against him because of disability, failed to reasonably accommodate him and engage in a good-faith interactive process, retaliated against him for protected ADA activity and medical leave, and subjected him to a hostile work environment based on disability and protected activity.

## VI. PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court:

1. Enter judgment in his favor on all counts;

2. Award back pay, front pay, compensatory damages, and punitive damages;

3. Order reinstatement (or front pay in lieu) with full benefits, including restoration of the Silver Pass, retirement eligibility, and removal from the "No Rehire" list;

4. Award attorney's fees and costs;

5. Grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

**Plaintiff demands a trial by jury on all issues so triable.**

**Dated: May 22, 2026**

**/s/ David M. Romero**

**David M. Romero, Pro Se**
**5965 Bent Pine Drive, Apartment 2133**
**Orlando, Florida 32822**
**(574) 229-3333**
**DaveRomero777@gmail.com**